UNITED STATES SERVICEMEN'S FUND, Margaret Ann McNeill, G. E. Waterhouse, David L. Bunten, Karen D. Yeager, and James Brozo, Plaintiffs,

v.

J. F. SHANDS and Wilson Yarborough, Defendants.

Misc. No. 759.

United States Court of Appeals, Fourth Circuit.

March 11, 1971.

George S. Daly, Jr., and Joseph H. Tieger, Charlotte, N. C., for plaintiffs.

Heman R. Clark, Fayetteville, N. C., for defendants.

## MEMORANDUM OF DECISION AND ORDER

CRAVEN, Circuit Judge.

On February 6, 1971, the plaintiffs sought to rent the Cumberland County Memorial Auditorium to put on what was described to the manager (Shands) as a variety show. A booking sheet was prepared indicating that James Brozo and the United States Servicemen's Fund were the sponsors of the event, that there would be a show at 3 p. m. and 8 p. m. and a tentative rental of $350 or 10 percent of net ticket sales. In the blank for insurance was written "Bod. Inj. $100,000 ea. person, $300,000 each accident—Property Damage $50,-000 each accident, $100,000 aggregate." The wages of ticket sellers were listed to be $2 an hour and ticket takers $1.85 an hour, and policemen assigned to the event at $15 per man per performance. In the entry for parking it was indicated that the sand lot area would be reserved.

Thereafter, Manager Shands decided to refuse to release the auditorium and addressed a letter to Mr. Brozo and the United States Servicemen's Fund stating three reasons for his refusal:

1. It is my opinion that you attempted to acquire the lease of the Auditorium without a fair disclosure of the intended event. You described the event to me as a variety show consisting of comedians and musicians when in actuality it is to be an anti-war rally of political nature far removed from the variety show you would have had me believe.

2. It is my opinion, based on personal experience, that the potentially rebellious attitude of the audience your show is calculated to provoke will be too great a hazard in terms of property damage and community relations for this facility to risk.

3. It is my opinion that your proposed event would attract an excessive number of people to this facility, thereby creating a conflict in traffic harmful to an event scheduled in the Arena.

Plaintiffs then sought relief in the federal court, filing a complaint on February 26, to require defendants to rent the auditorium to the plaintiffs for the scheduled performances on March 14, 1971. There was a hearing on February 26, 1971, before The Honorable Algernon Butler, who entered on March 9, 1971, an order denying plaintiffs relief. From that order the plaintiffs have noted an appeal to the United States Court of Appeals for the Fourth Circuit and have brought the matter before me as a single circuit judge pursuant to Rule 8.

Before Judge Butler, and now before me, the defendants take the position that they may lawfully refuse to rent the public auditorium to plaintiffs because

(a) On December 5 they made the mistake of renting the auditorium to a rock music group and there was extensive damage to the premises, including 300 holes burned in the carpet and damage to the upholstered chairs.

(b) On March 14 the adjacent arena facility with a seating capacity of 7,000 people is rented to the Ringling Brothers Circus and it would be unfair to the circus to book a competing show in the auditorium at the same time.

(c) The type of entertainment plaintiffs want to put on amounts to a political rally and the auditorium is not suitable for such a rally.

(d) The entertainers expected to put on plaintiffs' show include Jane Fonda, Dick Gregory and Elliott Gould and the nature of the show will be to present an anti-Vietnam war viewpoint, and that such a viewpoint is unpopular in Fayetteville because of the nearness of Fort Bragg and that the defendants fear it will be difficult to control the public attending the circus and the public attending the Jane Fonda show, and that possible violence might ensue.

Plaintiffs represent to the court that it is difficult to book nationally known entertainers and that they are committed for March 14 and cannot possibly return anytime soon thereafter.

Defendants concede that the arena will seat not more than 4,000 persons on Sunday, March 14 (its capacity is 7,000) because much of the seating space is utilized by the circus. The auditorium seats some 2,400 people, so that, assuming sell-out performances for both events, the total paid attendance cannot exceed more than the 7,000 capacity of the arena. Defendants also concede that they have not heretofore adopted any policy against simultaneous performances in the arena and the auditorium and have previously scheduled simultaneous events. I, therefore, conclude that the third reason offered by Manager Shands for refusing the rental is fictitious judged by prior practice and established policy. I think Mr. Shands has honestly revealed his motivation in reasons number 1 and 2 and especially his

judgment, reading the two together, that an antiwar show so close to Fort Bragg is thought by him to be unwise from the viewpoint of community relations. In short, it seems beyond argument that it is the nature of the show and its anti-Vietnam war bias that makes booking it on March 14 undesirable in the judgment of the manager. This is made clear by the following sentence in the letter dated February 22 to Brozo: "Please bear in mind that this Auditorium is a facility provided and supported by the taxpayers of this community and we must avoid extremely controversial events for the sake of maintaining pleasant community relations."

It is much too late in the history of the First Amendment to seriously suggest that public officials managing a public facility may pick and choose the philosophical and ideological content of programs using public auditoriums. Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Defendants, however, insist that the plaintiffs have no right to pick a given date and insist upon it. I agree, but there is more to it than that. Plaintiffs sought this particular date more than five weeks prior to the event, and Shands clearly indicated that the auditorium was available at that time and negotiated for the rental of it. The circus does not assert that it has a right to prevent a competing performance in the auditorium, and it is agreed there is no such contract provision in the circus' rental contract. Denying permission to put on plaintiffs' show when permission was sought some five weeks ago and schedules made at least that long ago amounts, in my opinion, to irreparable injury when it is not shown that another date or another auditorium or meeting place can be readily substituted.

▮▮▮ The hard question in the case is whether or not defendants have made a showing of clear and present danger of violence, physical injury and property damage that might result from the scheduling of these simultaneous events.

No evidence was offered for the district court, nor is any offered to me, beyond the mere speculation that people of varying convictions about the Vietnam war might collide unless restrained by police. Defendants concede that some 4,000 people attended a Jane Fonda show and rally some months ago without any violence or unpleasantness ensuing. It should be emphasized that it is those who invoke violence who must be suppressed and not those who express a viewpoint. The right of the people to peaceably assemble and to speak freely any viewpoint, however unpopular, cannot be allowed to yield to the speculative apprehension of police and municipal authorities that some unpleasantness or even damage to property and injury to persons might possibly occur. It is the duty of the municipality and the police to prevent such occurrences and to protect the expression of viewpoints.

It was not made clear in the district court, and is not clear to me, what the parties intended in the original negotiations about insurance and the obligation of plaintiffs to provide it and to pay for the attendance of police at the performances. There will be time enough at the trial on the merits in the district court to consider the respective obligations of the parties with respect to insurance premiums and cost of police protection in the light of the established practice of the Municipal Auditorium Commission. I have asked counsel to estimate the property damage that occurred on December 5 at the rock concert and they are unable to do so. To assure protection of the property, I will condition the injunction upon plaintiffs furnishing a bond in the amount of $1,000 to protect against property damage to the auditorium.

Now, therefore, it is ordered, adjudged and decreed that J. F. Shands and Wilson Yarborough and the Cumberland County Auditorium Commission are enjoined to make available to plaintiffs the Cumberland County Memorial Auditorium for two performances of plaintiffs' show on Sunday, March 14, 1971, at 3 and 8 p. m. at the customary

rental and subject to the customary conditions of such rental agreements. It is further ordered that defendants shall exercise their best efforts to enable plaintiffs to use the facilities without disruption and shall take steps as would be normally taken in like or similar circumstances to assure adequate police protection.

I would have preferred that this decision be made by a panel of three judges, but that being impossible because of the time factor, I have consulted with Chief Judge Haynsworth and Judge Winter of my court, who have helped me in reaching decision, but who are in no sense committed to it.